**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARIA J., [1]

      Plaintiff,

      v.

KILOLO KIJAZAKI, Acting
Commissioner of Social Security,

      Defendant.

Case No. 8:22-cv-02062-MAA

**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

## I.    INTRODUCTION

On November 10, 2022, Plaintiff Maria J. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying her applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. (ECF No. 1.) Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Judge.  (ECF Nos. 10, 13.)  On April 17, 2023, Defendant filed an Answer (ECF No. 15) and Certified Administrative Record ("AR," ECF No. 16).  On May 22, 2023, Plaintiff filed a brief (ECF No. 17), which appears to have been incorporated into the parties' joint Motion for Order filed August 16, 2023 (ECF No. 22).  This matter is fully briefed and ready for decision.  The Court deems the matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II.    SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed a Title II application for disability insurance benefits on March 2, 2020, and a Title XVI application for supplemental security income benefits on March 12, 2020.  (AR 16.)  In both applications, Plaintiff alleged disability beginning January 1, 2010.  (*Id*.)  The Commissioner denied the applications on December 11, 2020 (AR 141–50), and again upon reconsideration on April 6, 2021 (AR 153–64).  On April 13, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 165.)  At a telephonic hearing on November 4, 2021, the ALJ heard testimony from Plaintiff—who was represented by counsel at the hearing—and a vocational expert.  (AR 35–59.)  At the hearing, Plaintiff withdrew her Title II application and amended her alleged onset date for her Title XVI application to the application date (March 12, 2020).  (AR 16, 39.)

In a decision dated November 24, 2021, the ALJ denied Plaintiff's application after making the following findings under the Commissioner's five-step evaluation. (AR 13–34.)  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2010.  (AR 18, ¶ 1.)  At step two, the ALJ found that Plaintiff has the following severe impairments: lupus, polyarthralgias, chronic fatigue syndrome, obesity, posttraumatic stress disorder (PTSD), major depressive disorder, and generalized anxiety disorder.  (*Id*. ¶ 2.)  At step three, the ALJ found

2

that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the agency's listed impairments.  (AR 19, ¶ 3.)  Next, the ALJ found that Plaintiff has the following Residual Functional Capacity ("RFC"):

> Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: can lift and/or carry 20 pounds occasionally, 10 pounds frequently; can stand or walk for six hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; can occasionally push and pull with the bilateral upper extremities and bilateral lower extremities; can occasionally climb ladders, ropes and scaffolds; can frequently climb ramps and stairs; can frequently balance; can occasionally stoop, kneel, crouch and crawl; can frequently reach in all directions with both upper extremities; can frequently perform handling and fingering bilaterally; must avoid concentrated exposure to extreme cold and hazards; is limited to work involving simple, repetitive tasks; and is limited work involving no more than occasional contact with coworkers, supervisors and the public.

(AR 21, ¶ 4.)  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 27, ¶ 5.)  The ALJ classified Plaintiff as a younger individual on the alleged disability onset date.  (AR 28, ¶ 6.)  The ALJ categorized Plaintiff as having at least a high school education.  (*Id.* ¶ 7.)  The ALJ concluded that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not [Plaintiff] has transferable job skills." (*Id.* ¶ 8.)  At step five, the ALJ noted that the vocational expert testified that an individual of Plaintiff's age, education, work experience, and residual functional capacity could perform light and unskilled occupations such as: production assembler, with 190,000 jobs; and garment folder, with 75,000 jobs.  (AR 29, ¶ 9.) The ALJ concluded that, "[c]onsidering [Plaintiff's] age, education, work

experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]"  (AR 28, ¶ 9.) Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from January 1, 2010.  (AR 29, ¶ 10.)

On September 13, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1–7.)  Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's "decision to deny benefits . . . 'is not supported by substantial evidence or is based on legal error.'"  *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ."  *Robbins*, 466 F.3d at 882.

## IV.   DISCUSSION

### A.   Disputed Issue

The single disputed issue is whether the ALJ improperly rejected Plaintiff's testimony regarding pain and functional limitations.  (ECF No. 22, at 2.)  Plaintiff argues that the ALJ improperly rejected her subjective symptom testimony by failing to offer any specific, clear and convincing reasons supported by substantial evidence in the record.  (*Id*. at 3.)  Defendant asserts that the ALJ's reasoning in discounting Plaintiff' subjective symptom testimony was consistent with a reasonable interpretation of the record and controlling legal authority.  (*Id.* at 11.)

### B.   Applicable Law

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter*, 504 F.3d at 1035–36).  "In this analysis, the claimant is *not* required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  *Id.* (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  *Id.* at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by

1   making specific findings as to credibility and stating clear and convincing reasons

2   for each.").  "This is not an easy requirement to meet: 'The clear and convincing

3   standard is the most demanding required in Social Security cases.'" *Garrison*, 759

4   F.3d at 1015 (quoting *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002)).

5   The ALJ must evaluate "the intensity and persistence of those symptoms to

6   determine the extent to which the symptoms limit [the claimant's] ability to perform

7   work-related activities for an adult . . . ."  Social Security Ruling 16-3p, 2016 SSR

8   LEXIS 4, at *4 (Mar. 16, 2016).

9           While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's

10  character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may

11  consider "prior inconsistent statements concerning the symptoms, and other

12  testimony by the claimant that appears less than candid; . . . unexplained or

13  inadequately explained failure to seek treatment or to follow a prescribed course of

14  treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d

15  1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284).  Inconsistencies

16  between a claimant's testimony and conduct, or internal contradictions in the

17  claimant's testimony, also may be relevant.  *Burrell v. Colvin*, 775 F.3d 1133, 1137

18  (9th Cir. 2014).  In addition, the ALJ may consider "the claimant's work record and

19  observations of treating and examining physicians and other third parties regarding,

20  among other matters, the nature, onset, duration, and frequency of the claimant's

21  symptom; precipitating and aggravating factors; [and] functional restrictions caused

22  by the symptoms . . . ."  *Smolen*, 80 F.3d at 1284.  However, it is improper for an

23  ALJ to reject subjective testimony based "'solely on a lack of objective medical

24  evidence to fully corroborate' the claimant's allegations."  *Bray v. Comm'r of SSA*,

25  554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

26  345 (9th Cir. 1991)).

27          The ALJ must make "a credibility determination with findings that are

28  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

1   discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

2   Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see*

3   *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a

4   claimant's testimony is not credible 'must be sufficiently specific to allow a

5   reviewing court to conclude the adjudicator rejected the claimant's testimony on

6   permissible grounds and did not arbitrarily discredit a claimant's testimony

7   regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)).  Although an ALJ's

8   interpretation of a claimant's testimony may not be the only reasonable one, if it is

9   supported by substantial evidence, "it is not [the court's] role to second-guess it."

10  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

11

12      **C.**    **Plaintiff's Statements**

13             1.    <u>Adult Function Report</u>

14        On February 8, 2021, Plaintiff completed an Adult Function Report, in which

15  she described her problems and limitations as follows:

16        She has degenerative arthritis in her lower back, hips, and knees, and lupus.

17  (AR 323.)  She cannot be exposed to the sun and is sensitive to chemicals.  (*Id.*)

18  Her immune system is suppressed due to her autoimmune disease.  (*Id.*)  She is

19  physically limited either due to her lupus or arthritis and anemia, or her depression

20  and anxiety interferes mentally.  (AR 328.)

21        Her illness, injuries, or condition affect her ability to lift, squat, bend, stand,

22  walk, kneel, climb stairs, see, and concentrate, and her memory.  (*Id.*)  Her physical

23  problems limit her ability to stand or walk.  (AR 323.)  It is hard for her to bend

24  down, so getting dressed is difficult.  (AR 324.)  It is difficult for her to get in and

25  out of the tub to bathe.  (*Id.*)  She cannot shave her legs and struggles to use the

26  toilet.  (*Id.*)  She can no longer walk her dog (AR 323); her son walks her dog and

27  feeds him (AR 324).  She can barely walk to the garage before needing to stop and

28  rest.  (AR 328.)

She does not do household chores—for example, cleaning, laundry, household repairs, ironing, mowing, etc.—except she folds laundry, which "takes no time at all." (AR 325.)  She does not do house or yard work because she is in extreme pain when standing or walking.  (*Id*.)  She tries to cook dinner for her family three times a week, and can do so sitting down with help from her kids; this takes one hour to an hour and a half.  (AR 324–25.)  She can no longer cook standing up.  (AR 323.)

She only goes outside when absolutely necessary—i.e., for doctors or to go grocery shopping.  (AR 326.)  Her anxiety and fears keep her inside.  (*Id*.)  She never goes out alone, and when she goes out, she rides in a car and does not drive.  (*Id*.)  She goes grocery shopping once a month, and goes to Food 4 Less or Walmart at least once a month.  (AR 326–27.)  Last month her doctor prescribed a wheelchair, which she uses when leaving the house, including to go grocery shopping.  (AR 324, 329.)

She spends a lot of her day in bed watching television with her mom and family.  (AR 324.)  It takes her four hours to watch a ninety-minute movie.  (AR 328.)  She enjoys watching cooking channels and Youtube with her brothers, and does this daily.  (AR 327.)  She also emails with others, and Zooms with her therapist every week.  (AR 327, 330.)  Since the illness, she no longer does social activities, such as river days, long walks, dancing, or barbeques.  (AR 327.)

She is afraid of men, crowds, and sleeping.  (AR 329.)  She gets anxious in crowds and panics.  (AR 328.)  She has severe night terrors and cannot sleep without medication.  (AR 324.)  Her sons have to remind her to take her medication; if she forgets, she cannot sleep and her nightmares return.  (AR 325.)

She can follow directions but has trouble with measurements.  (AR 328.)  She is okay following spoken instructions and gets along with authority figures.  (*Id*.)  She has never been fired or laid off from a job because of problems getting along with people.  (*Id*.)  When stressed, she shuts down.  (AR 329.)  She accepts changes in routine.  (*Id*.)

2.    <u>Hearing Testimony</u>

During the November 4, 2021 hearing before the ALJ, Plaintiff testified about her problems and limitations as follows:

She last worked as a drug and alcohol abuse counselor until 2009 (AR 41). She had that job for six to eight years (*id*.) but stopped working due an emotional, mental breakdown (AR 46).  She also has been unable to work since March 2020 because she has lupus and rheumatoid arthritis.  (*Id*.)

She spends most of the day in bed.  (*Id*.)  It is a chore getting in and out of bed.  (AR 46–47.)  She needs help to get up and when she is sitting down she needs assistance with pretty much everything.  (AR 47.)  Her kids take care of her most of the time, and her mother helps her make the bed.  (*Id*.)  She does not often do those things for which she is embarrassed to ask for help.  (*Id*.)  She is restricted from being outside in the sun, is in a lot of pain, can barely stand for long durations, cannot walk the dog, has difficulty sleeping, and has to sit down to cook dinner. (AR 46.)  Taking a shower is very tedious, and by the time she is exiting the bathroom she is in so much pain she is hyperventilating.  (AR 47.)  She tends to shower maybe once or twice a week and tends to stay in the same pajamas for days. (*Id*.)  Bending over to put on socks is very painful.  (*Id*.)

She only leaves the house for medical appointments or when she is forced to go grocery shopping.  (AR 47.)  Sometimes she will have three doctors appointments in one week.  (*Id*.)

She cannot drive.  (AR 47.)  Driving is difficult because she gets lost and her hands get really heavy.  (*Id*.)  The muscles in her body seem to work against her, so holding the steering wheel would cause her to have constricting pain.  (AR 47–48.) She gets lost a lot because she does not have a memory.  (AR 48.)  She has difficulties paying attention and concentrating.  (*Id*.)  The last time she drove, she remembers stopping at the light to make a left-hand turn, and her son was screaming because she was about to go into traffic and she had "hazed out" and did

1   not even remember being in the car.  (*Id*.)  She gets around by medical taxi, and her

2   son goes with her so he can push her wheelchair.  (*Id*.)

3        She uses a wheelchair provided by MediCal.  (AR 50.)  All of her doctors are

4   aware of the wheelchair, but her primary doctor (Dr. Preshwani, who works with

5   Dr. Chan) prescribed it.  (*Id*.)  If she has to travel from the parking lot to the

6   appointment, she will use the wheelchair.  (AR 51.)  She uses it for every

7   appointment other than Dr. Preshwani's because the parking lot is right in front of

8   the door.  (AR 50.)  She has to use a wheelchair for the grocery store, or else she

9   will use the wheelchair in the store.  (*Id*.)

10       At home, she can walk short distances.  (AR 52.)  She cannot stand too long

11   due to pain or fatigue, but can make it from her room to the living room.  (*Id*.)

12

13       **D.    Analysis**

14       At the first step of the two-step evaluation, the ALJ found that Plaintiff's

15   "medically determinable impairments could reasonably be expected to cause the

16   alleged symptoms[.]"  (AR 23.)  At the second step, however, the ALJ found that

17   Plaintiff's "statements concerning the intensity, persistence and limiting effects of

18   these symptoms are not entirely consistent with the medical evidence and other

19   evidence in the record for the reasons explained in this decision."  (AR 24.)

20       The parties disagree as to the reasons the ALJ gave for his negative

21   assessment of Plaintiff's testimony.  Plaintiff contends that the ALJ dismissed

22   Plaintiff's subjective symptom testimony solely due to lack of objective medical

23   evidence.  (ECF No. 22, at 6.)  Defendant counters that: "the ALJ found that the

24   objective medical evidence did not corroborate Plaintiff's claims of disabling

25   symptoms and functional limitations"; "the ALJ reasonably found Plaintiff's

26   statement that she required a wheelchair was inconsistent with the lack of

27   prescription for a wheelchair"; and "the ALJ explained that Plaintiff's treatment

28   ///

1  history was inconsistent with her complaints of disabling symptoms and physical

2  limitations."  (*Id*. at 8–11.)

3         The Court may review only those reasons that the ALJ specifically cited as

4  grounds to reject Plaintiff's subjective symptom testimony.  *See Connett v.*

5  *Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the

6  reasons the ALJ asserts."); *Garrison*, 759 F.3d at 1010 ("We review only the

7  reasons provided by the ALJ in the disability determination and may not affirm the

8  ALJ on a ground upon which he did not rely.").  Here, the only discernible reason

9  that the ALJ gave for discounting Plaintiff's testimony was based on the lack of

10  objective medical evidence.  (AR 21–27.)  This includes Defendant's purported

11  second reason: the ALJ's finding that "[a]lthough the claimant alleged she required

12  the use of a wheelchair when she left her home, the claimant's record does not

13  support a finding that the use of a wheelchair is medically necessary."  (AR 22.)

14         Even if the objective medical evidence supported these findings, they would

15  not be sufficient by themselves to discount Plaintiff's testimony.  *See Bunnell*, 947

16  F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an

17  underlying impairment, an adjudicator may not reject a claimant's subjective

18  complaints based solely on a lack of objective medical evidence to fully corroborate

19  the alleged severity of pain." (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th

20  Cir. 1986))); *Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not

21  credible in part or in whole, he or she may not disregard it solely because it is not

22  substantiated affirmatively by objective medical evidence."); *Light v. SSA*, 119 F.3d

23  789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be

24  premised wholly on a lack of medical support for the severity of his pain.").

25         Defendant argues that the ALJ stated another reason to discount Plaintiff's

26  testimony: "the ALJ explained that Plaintiff's treatment history was inconsistent

27  with her complaints of disabling symptoms and physical limitations" because "[t]he

28  ALJ noted that Plaintiff was not compliant with her medication regimen."  (ECF

No. 22, at 11.)  But the ALJ did not clearly link any such observation to Plaintiff's testimony.  It is well-settled that a reviewing court may not construe an ALJ's general findings from the medical record as reasons to reject a claimant's subjective symptom testimony if the ALJ does not explicitly tie such findings to the testimony. *See Burrell*, 775 F.3d at 1139 ("Although the ALJ made findings . . . concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings."); *Treichler*, 775 F.3d at 1102 ("We require the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony. That means [g]eneral findings are insufficient." (alterations in original) (citations and quotation marks omitted)); *Brown-Hunter*, 806 F.3d at 494 ("[The ALJ] did not link that testimony to the particular parts of the record supporting her non-credibility determination."); *Potter v. Comm'r of Soc. Sec.*, 571 F. App'x 569, 572 (9th Cir. 2014) ("Problematically, the ALJ did not clearly tie [the claimant's] failure to pursue the [treatment] to his credibility.").

In sum, the ALJ did not provide sufficient reasons to reject Plaintiff's testimony.  Thus, reversal is warranted.


### E.  Remand for Further Proceedings

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  *See McLeod v.*

1  *Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).  Specifically, remand is warranted here

2  for reconsideration of Plaintiff's symptom statements because the ALJ's failure to

3  provide any clear explanation for discounting such statements in the decision

4  prevents this Court from meaningfully determining whether the decision is

5  supported by substantial evidence.  *See Treichler*, 775 F.3d at 1103 ("Because 'the

6  agency's path' cannot 'reasonably be discerned,' we must reverse the district

7  court's decision to the extent it affirmed the ALJ's credibility determination."

8  (citation omitted)).

9

10  **V.    ORDER**

11          The Court **ORDERS** that judgment be entered reversing the decision of the

12  Commissioner and remanding this matter for further administrative proceedings.

13          **IT IS SO ORDERED.**

14

15  DATED: August 23, 2023                    _____

16                                            MARIA A. AUDERO
                                              UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28